UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**ROBERT HOWARD ROLLAIN**,

                        Plaintiff,

v.

**NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY**,

                        Defendant.

**DECISION AND ORDER**
1:17-CV-00235-RJA

---

## INTRODUCTION

Plaintiff Robert Howard Rollain (hereinafter "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of a final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. (Dkt. 1).[1] The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkts. 14 and 17). Due to the long pendency of these proceedings, the Court assumes the parties' close familiarity with the procedural history, administrative record, and all issues before the Court. The Court has carefully considered the entire record, and for the reasons set forth below, the Court **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's motion.

## DISCUSSION

This Court reviews the record to determine whether the Commissioner applied the correct legal standard and whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g). Plaintiff contends the ALJ erred in discounting his subjective reports of physical and psychiatric symptoms and in weighing medical opinion evidence of the consultative examiners. (Dkt. 14 at 18, 24). The Court disagrees.

---

[1] References to "Tr." are to the administrative record in this case.

1

Subjective reports of symptoms

The ALJ was directed by the Appeals Council pursuant to the U.S. District Court's remand order to, *inter alia*, "[f]urther evaluate the nature, severity, and limiting effects of the alleged claimant's impairments" and "[f]urther evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms . . .." (Tr. 4).

The ALJ then found Plaintiff has the following severe impairments: "asthma; remote history of right foot fractures; remote history of hearing loss of the right ear; history of seizures; panic disorder without agoraphobia; anxiety disorder; paranoid schizophrenia; personality disorder with narcissistic features; borderline intellectual functioning; and cannabis use disorder." (Tr. 7).

The ALJ found Plaintiff's residual functional capacity ("RFC") to consist of "medium work" as defined in 20 C.F.R. § 416.967(c), with additional limitations.[2] However, even with the ALJ's additional limitations factored into Plaintiff's RFC, Plaintiff maintains that his combination of impairments renders him unable to work because of the symptoms associated with his conditions. (Dkt. 14 at 24). The Court finds that substantial evidence supports the ALJ's decision to discount Plaintiff's reported severity of symptoms and that no combination of Plaintiff's severe impairments, physical or psychiatric, render him unable to perform work at his RFC.

*Physical symptoms*

The record contradicts Plaintiff's own testimony regarding the severity and limiting effects of his physical symptoms. Moreover, Plaintiff's own testimony was internally inconsistent. The ALJ appropriately discounted Plaintiff's self-reported disabling physical symptoms because the evidence in the record does not support Plaintiff's contention that

---

[2] ". . . except that he can frequently make use of right foot controls, can stand or walk no more than thirty minutes continuously, and can never use ladders, ropes, or scaffolds. He can also face no loud noise exposure, he must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, and he can perform no work around unprotected heights, dangerous moving mechanical parts, or flammable liquids. The claimant can understand, remember, and carry out simple and routine instructions and tasks, can perform no supervisory duties or independent decision-making, can tolerate minimal changes in work routine and processes, can have occasional interaction with supervisors, and can have no or only incidental interaction with supervisors, and can have no or only incidental interactions with co-workers and the general public." (Tr. 10).

he cannot sustain substantial gainful employment. *See* 20 C.F.R. § 416.929 (an ALJ is required to consider plaintiff's reports of pain and functional limitations); *see also Campbell v. Astrue,* 465 Fed.Appx. 4, 2012 WL 29321 at *7 (2d Cir. 2012) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (The ALJ is "not require[d] to accept the claimant's subjective complaints without question" and has discretion "in weighing the credibility of the claimant's testimony in light of the other evidence in the record.").

Plaintiff's medical evidence of physical symptoms largely focuses on what Plaintiff refers to as "mini-strokes" or "seizures"; however, after extensive and repeated testing, it is undisputed that Plaintiff does not suffer from epilepsy. *See* (Tr. 13, 803). These "mini-strokes" or "seizures" also do not inhibit Plaintiff from running errands, housework, driving, or flying. *See* (Tr. 40-41, 50-51, 57-59, 69-70, 77-79). Notably, the medication Plaintiff was prescribed "generally resolved" the seizures he was experiencing. (Tr. 13, 662).

Plaintiff testified at his 2016 hearing that he has constant severe pain in his right foot and big toe. (Tr. 58-60). However, he admitted that special shoes alleviate the pain so that he could continue working. (Tr. 60-61) ("A lot of time I use Dr. Sholes [sic] Foot on that one side or I'll put a Band-Aid when I used to work. I has special shoes made that were a one-inch cushion on that one toe. So I – you know, if I did put pressure on it, I didn't feel it, so I could continue working and provide for my daughters."). Plaintiff also volunteered to his cardiologist in 2007 that he is "very active." (Tr. 572).

Plaintiff also testified that the only medication he was prescribed at that time of the 2016 hearing was Xanax for anxiety and sleeping problems, and nothing for pain. (Tr. 64). In fact, Plaintiff testified that the last time he was treated for his foot, back, and knee pain was 30 years ago. (Tr. 67). He visits his sister who lives about one mile away from his residence and drives her to stores and medical appointments. (Tr. 40-41). Plaintiff also testified he drops off his girlfriend at stores and returns to pick her up. (Tr. 50-51).

Plaintiff testified he could perform "positively zero lifting" and no "carrying"; however, this limitation apparently has not impacted his ability to fly to California to visit his son—just a few months prior to his disability hearing, transport firewood into his girlfriend's house using a dolly, use a push lawn mower that has a pull-start, take care of this three grandchildren and three dogs, and travel to Jamestown, New York from Buffalo,

3

New York to go antiquing "once every other month or . . . once a month."(Tr. 57-59, 69-70, 77-79, 396).

Based on the foregoing, the Court therefore finds that substantial evidence supports the ALJ's decision to discount Plaintiff's reports of the severity of his physical symptoms and substantial evidence supports that Plaintiff can perform work at his RFC.

*Psychiatric Symptoms*

Plaintiff argues that his "daily activities are limited by his psychiatric symptoms, and his ability to perform them does not necessarily indicate he has the capacity to perform full-time work." (Dkt. 14 at 25). Plaintiff also argues that his psychiatric condition inhibits his understanding or ability to seek out treatment for his physical and mental conditions. (*Id.*). The record also does not support these arguments.

As discussed above, Plaintiff was found to have "panic disorder without agoraphobia; anxiety disorder; paranoid schizophrenia; [and] personality disorder with narcissistic features." (Tr. 7). However, at the time of his 2016 hearing, Plaintiff had seen a spectrum of mental health professionals and was only prescribed Xanax for anxiety and sleep problems. (Tr. 64). Plaintiff's treating physicians consistently found that he responded well to this conservative treatment of his anxiety-related symptoms. (Tr. 793, 799, 854). In reviewing Plaintiff's medical history, the ALJ found that Plaintiff has only a "mild" restriction in carrying out activities of daily living and a "moderate" restriction on socializing appropriately. (Tr. 9). These findings are consistent with Plaintiff's activities of daily living and supports the notion that Plaintiff can function normally without any marked limitations. (*Supra* at 3-4).

When asked at Plaintiff's 2011 disability hearing about the possibility of seeking care from a psychologist or psychiatrist, Plaintiff testified he had not received psychiatric treatment because he could not find one in the phonebook who accepted Medicaid. (Tr. 941). However, this admission alone more than suggests that Plaintiff understood that he needed psychiatric treatment and had the ability to seek out such treatment. Moreover, by the time Plaintiff appeared for his 2011 disability hearing, he had in fact sought out mental health care on several occasions. Plaintiff saw Dr. Kalonaros for "memory

4

problems" on several occasions in 2009. (Tr. 386). Plaintiff also had the opportunity to be treated by two other mental health professionals (in addition to Dr. Kalonaros) in 2009 and 2011 but refused further treatment for reasons related to "personality conflict[s]". *See* (Tr. 394, 677). Furthermore, Plaintiff saw Dr. Godzala, a psychiatrist, in 2015. (Tr. 770). Plaintiff also saw a licensed mental health counselor for counseling sessions (Tr. 772-91) and a therapist in late 2015. (Tr. 877).

Irrespective of Plaintiff's credibility regarding the severity of his psychiatric symptoms, the Court finds the ALJ appropriately considered Plaintiff's mental impairments and related symptoms. "The Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (referring to 20 C.F.R. § 404.1520a). The ALJ must also unambiguously document the process of evaluating mental impairments under 20 C.F.R. § 404.1520a and "include a specific finding as to the degree of limitation in each of the functional areas [described in the regulation]". *Kohler*, 546 F.3d 260 at 266. (referring to § 404.1520a(e)). These functional areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 404.1520a(c)(3). The ALJ clearly documents Plaintiff's capacity in each of the four functional areas and cites to the record in each case. (Tr. 8-9). Therefore, the Court finds the ALJ appropriately adhered to the regulations regarding assessment of the degrees of limitation in each of the four functional areas.

The Court finds that substantial evidence supports the ALJ's decision to discount Plaintiff's reports of the severity of his psychiatric symptoms and substantial evidence further supports the ALJ's finding that Plaintiff can perform work at his RFC.

<u>Weighing of medical opinion evidence of consultative examiners</u>

Plaintiff contends the ALJ erred in weighing the medical opinions of consultative examiners ("CEs") because the opinions were, among other things, vague and internally inconsistent in their findings of limitations on Plaintiff's RFC. Plaintiff also contends the ALJ erred in his analysis of factors to be considered when weighing opinion evidence specifically from non-treating sources, for example, by giving too much credence to the opinions of physicians who have knowledge of the Social Security regulations. (Dkt. 14

5

at 18-23). The Court finds that the ALJ did not err in assessing the medical opinions of the CEs.

In evaluating the opinions of non-treating sources like CEs, the ALJ must consider a range of factors. 20 C.F.R. § 416.927. One of those factors includes the physician's knowledge of Social Security disability regulations. 20 C.F.R. § 416.927; *see Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *3 (N.D.N.Y. Oct. 28, 2016). Additionally, the ALJ may assign greater weight to the opinion of a non-treating source when that opinion is better supported by the record. *See Ridosh v. Berryhill*, No. 16-CV-6466L, 2018 WL 6171713, at *6 (W.D.N.Y. Nov. 26, 2018).

In disability cases, physicians supplement the record with their own medical data, but it is ultimately the ALJ's task to assess whether that data supports a finding of disability for Social Security purposes. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Importantly, if a medical opinion is at odds with the bulk of evidence in the record, the ALJ need not give that opinion significant weight. *See Ridosh v. Berryhill,* No. 16-CV-6466L, 2018 WL 6171713, at *6, 2018 (W.D.N.Y. Nov. 26, 2018). The Court finds the ALJ appropriately exercised his discretion.

Here, the ALJ generally gave more weight to those CEs whose opinions reflected a greater physical and mental functioning capacity because *the record* supports a greater physical and mental functioning capacity. The Plaintiff's record of activities of daily living strongly suggests Plaintiff can perform work at his determined RFC. (Tr. 14-15). However, to the extent that any consultative examiners provided internally inconsistent opinions, it is the role of the ALJ to reconcile such inconsistencies. *See Lanzo ex rel. J.I.C. v. Astrue*, No. 10-CV-271S, 2012 WL 838921, at *1 (W.D.N.Y. Mar. 12, 2012) (citing *Valente v. Sec'y of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984)) ("This Court must afford the Commissioner's determination considerable deference, and will not substitute 'its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" (alteration in original). Accordingly, the Court finds the ALJ appropriately weighed the opinions of the CEs.

## CONCLUSION

Based on the forgoing, the Court finds that substantial evidence supports the ALJ's decision to discount Plaintiff's reported severity of symptoms and that no combination of Plaintiff's severe impairments, physical or psychiatric, render him unable to perform work at his RFC. Further, the ALJ did not err when weighing the opinions of consultative examiners. The Commissioner's motion for judgment on the pleadings (Dkt. 17) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 14) is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　_s/Richard J. Arcara_　　　　　
　　　　　　　　　　　　　　　　　　　　**HONORABLE RICHARD J. ARCARA**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**

**Dated:** April 3, 2019